STATE *ex rel.* MOUNTAIN FUEL CO.

*v.*

CURTIS B. TRENT, JR., STATE COMPENSATION COMMISSIONER

(No. 10592)

Submitted September 2, 1953. Decided September 29, 1953

*E. Wayne Talbott,* for petitioner.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for respondent.

BROWNING, JUDGE:

Relator, Mountain Fuel Company, a corporation, seeks a writ of mandamus directing the respondent, State Compensation Commissioner, to classify an accident occurring in relator's mine on October 23, 1946, as a "catastrophe" within the meaning of the Workmen's Compensation Act, and to credit the charges heretofore made against relator's account accordingly.

The accident occurred when thirteen of relator's employees were exposed to a quantity of carbon dioxide gas or "black damp". One employee died immediately as a result of such exposure, one other was declared to be permanently and totally disabled, and awarded compensation benefits for life on February 28, 1951. This award was protested by relator, and upon affirmance by the Commissioner was appealed to the Workmen's Compensation Appeal Board where the employer contended that, if the award was upheld, the accident should be classified a "catastrophe" and the relator's account credited. The Appeal Board ordered that the award be affirmed, adding that it was the opinion of the Board that a "catastrophe" was indicated. This Court refused an appeal from that order and the relator filed its petition for writ of mandamus alleging that, though requested to do so, the Commissioner has refused to properly adjust the charges consonant with a "catastrophe".

The respondent demurred to the petition on two grounds: (1) That the relator has not exhausted its administrative remedies; and (2) that the petition shows upon its face that the accident was not a "catastrophe" within the statutory ·definition thereof.

The relator contends that the Appeal Board, by its order of August 9, 1952, decided this question, and no appeal having been taken within the statutory period from that order, nothing now remains to be done except for the Commissioner to comply therewith. A careful examination of the order, however, indicates that the

Board affirmed the Commissioner's ruling of January 14, 1952, this language being used: " * * * it is hereby adjudged, ordered and decreed that the order of the Commissioner as of the 14th day of January, 1952, should be and the same hereby is affirmed; * * *." After inserting a semicolon at that point, the order continues: "but it is the opinion of the Appeal Board that the award should be charged to the surplus fund * * *." In a memorandum accompanying the Board's order, it states that while it believes the disability resulting from the accident constitutes a catastrophe within the meaning of the statute, that the matter was not properly before it, inasmuch as no order of the Commissioner was entered relative to that phase of the case. There was no adjudication of this question by the Appeal Board, and the Commissioner was not bound by the suggestion contained in its order relative to the charges that should be made in his department. The provisions of Code, 23-5-1, are sufficient to give the Appeal Board jurisdiction of the question raised in this proceeding if originally passed upon by the Commissioner and properly presented upon appeal to the Board. However, we do not believe that remedy to be exclusive, and are of the opinion that this Court has jurisdiction in mandamus to adjudicate the issue presented upon this record.

Section 1, Article 3 of Chapter 131 of the 1945 Acts of the Legislature, reads in part as follows: " * * * A catastrophe is hereby defined as an accident in which three or more employees are killed or receive injuries, which, in the case of one individual, consist of: Loss of both eyes or the sight thereof; or loss of both hands or the use thereof; or the loss of both feet or the use thereof; or the loss of one hand and one foot or the use thereof.* * * "

It is interesting to note that in 1947 the Legislature amended this section by Chapter 165, Article 3, Section 1, Acts of the Legislature, 1947, to read as follows: "A catastrophe is hereby defined as an accident in which

three or more employees are killed or receive injuries, which, in the case of each individual, consist of: Loss of both eyes or the sight thereof; or loss of both hands or the use thereof; or loss of both feet or the use thereof; or loss of one hand and one foot or the use thereof." It will be noted that only one word of the 1945 Act was changed by the Amendment of 1947. The word "one" appearing before the word "individual" in the earlier Act was changed to the word "each". It will also be noted that the accident occurred in 1946, while the 1945 Act was effective, and that the award of total permanent disability, which the relator contends makes the accident a catastrophe, was made in 1951, subsequent to the 1947 Amendment. Inasmuch as neither counsel for relator nor respondent has raised the question of whether the catastrophe occurred at the time of the accident, or whether it came into existence at the time it was finally determined that one of the employees injured therein had suffered a total permanent disability, this case is being considered as if the catastrophe occurred at the earlier date, and, therefore, is governed by the provisions of the 1945 Act.

Counsel for respondent maintains that the 1945 Act is clear and unambiguous wherein it specifically defines the injuries which one employee must receive in order to constitute a catastrophe, but that the Act is ambiguous wherein it states that such injuries to only one individual constitutes a catastrophe, whereas no catastrophe results even if two persons are killed. Counsel for the relator maintains that the language of the 1945 Act provides that total permanent disability of one employee involved in an accident constitutes a catastrophe, and that it is not necessary for such injured employee to receive one of the specific injuries enumerated in that Act if three or more are injured.

Code, 23-4-6(j), reads as follows:

"The following permanent disabilities shall be conclusively presumed to be total in character:

"Loss of both eyes or the sight thereof.

"Loss of both hands or the use thereof.

"Loss of both feet or the use thereof.

"Loss of one hand and one foot or the use thereof.

"In all other cases permanent disability shall be determined by the commissioner in accordance with the facts in the case, * * *."

All who are familiar with the Workmen's Compensation Law, and the administrative procedure of the department, are aware that identical charges are made against the accounts of subscribers to the fund in fatal and total permanent disability cases, although the amounts expended as benefits in the latter category probably exceed the former on the average. It is, therefore, difficult to understand why the 1945 Act provided that a total permanent disability award under certain conditions would constitute a catastrophe, whereas if only two persons were killed such a result would not obtain. The Amendment of 1947 raised the number of total permanent disabilities which must result to create a catastrophe to coincide with the number of fatalities that had always been required by statute.

Courts have nothing to do with the motives or wisdom of legislation, and where the language of the statute is free from ambiguity and the intent is plain, there is no occasion for interpretation by a court. "Where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. In such case courts must be governed by the language and should never attempt to read into a provision a meaning not intended. And where any clause of a statute is free from ambiguity, it is not admissible to go out of that clause and search in the act at large for provisions which might tend to render ambiguous the plain terms of the

clause under interpretation." 17 M. J., Statutes, 34. *Raynes* v. *Nitro Pencil Co.*, 132 W. Va. 417, 52 S. E. 2d. 248; *Baird-Gatzmer Corp.* v. *Henry Clay Coal Mining Co.*, 131 W. Va. 793, 50 S. E. 2d. 673; *State* v. *Conley*, 118 W. Va. 508, 190 S. E. 908.

No ambiguity is created by the 1945 Act defining a catastrophe because its definition of total permanent disability does not coincide with the definition contained in Code, 23-4-6(j). The catastrophe fund was created by the Legislature for the purpose of minimizing the individual financial loss to an employer from an accident which resulted in multiple fatalities or designated injuries. It was, and is, in the discretion of the Legislature to fix the number and severity of injuries which constitutes a catastrophe. It is not necessary that such a definition coincide with other provisions of the Workmen's Compensation Law.

We are impressed with the argument and reasoning of counsel for relator that a severe financial hardship might result to an employer under the 1945 Act, and the 1947 Amendment as well, should an accident occur resulting in total permanent disability to a large number of his employees unless the required number received the specific injuries set out in the original Act and the Amendment. We agree that consistency requires that an accident resulting in total permanent disability, as defined by Code, 23-4-6(j), to the required number of employees should constitute a catastrophe, as well as an accident which results in the death of three or more employees. However, the province of this Court is to apply and, in a proper case, interpret the law, not enact it. The language of the 1945 Act, defining a catastrophe, is plain and unambiguous, and its meaning clear and definite. Therefore, effect must be given to it regardless of what this Court may think of its wisdom.

The accident, of October 23, 1946, resulted in injuries to more than the minimum number of employees required by the 1945 Act, and one became totally and permanently

disabled, but that one did not receive any of the specific injuries required by the Act to constitute a catastrophe.

The demurrer of the respondent is sustained, the writ is refused, and the rule discharged.

*Writ denied.*