MEDICAL CARE, INC.

v.

CHIROPODY ASSOCIATION OF WEST VIRGINIA, *et al.*

(CC 827)

Submitted April 18, 1956.          Decided May 29, 1956.

*Scherr, Meek & Vinson,* for petitioner.

*Palmer & Elkins, J. Campbell Palmer, III,* for respondents.

HAYMOND, JUDGE:

This is a declaratory judgment proceeding instituted in the Circuit Court of Cabell County, West Virginia, in December, 1954, pursuant to the provisions of Section 2, Article 13, Chapter 26, Acts of the Legislature, 1941, Regular Session, Michie's Code of West Virginia, 1955, Annotated, Section 2, Article 13, Chapter 55, in which the plaintiff, Medical Care, Inc., a corporation, seeks determination of the question whether the plaintiff is required to pay, under its contracts with certain defendants, charges incurred by them for treatments which they have received from certain practitioners of chiropody who are also defendants.

The plaintiff is a nonprofit corporation under the laws of this State with its principal office in the City of Huntington, West Virginia, and it does business pursuant to Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended by Article 13, Chapter 40, Acts of the Legislature, 1947, Regular Session, and Article 13, Chapter 33, Acts of the Legislature, 1951, Regular Session, Michie's Code, 1955, Annotated, Article 13, Chapter 31. The defendant, Chiropody Association of West Virginia, is a voluntary unincorporated association of chiropodists, the defendants John J. Bates, Walter Adkins and Earl W. Gault are practitioners of chiropody who have treated as patients certain defendants who have contracted with the plaintiff for services covered by its plan of operation, and the defendants Mrs. Fred Way, Jr., Roy May, James Boys, Mrs. Grover Wild, Alice Andrews, and Oliver H. Ray are subscribers to the plan of the plaintiff who have received treatment by practicing chiropodists and have submitted bills for the payment of such treatment to the plaintiff which it has refused to pay.

To the petition of the plaintiff the defendants, on December 28, 1954, filed their joint and several answer and its exhibits; and to the answer the plaintiff filed its written demurrer which challenged the legal sufficiency

of the answer on the grounds that a chiropodist is not a duly licensed physician within the meaning of the applicable statute and treatment by a chiropodist is not within the scope of the plan operated by the plaintiff or the contracts made by it with its subscribers.

By order entered October 19, 1955, the circuit court overruled the demurrer of the plaintiff to the answer of the defendants, and held that a duly licensed chiropodist was eligible to participate in the medical service plan operated by the plaintiff and that the plaintiff was obligated under its contracts with the defendants who are subscribers to its plan to pay bills incurred by them for services rendered by such chiropodists, provided such services consisted of medical, mechanical or surgical treatment of ailments of the human hand and foot with the use of local anaesthetics; and on the joint motion of the parties certified its ruling on the demurrer to this Court.

The questions presented by the certificate of the circuit court are:

(1) Whether a chiropodist is a duly licensed physician within the meaning of Section 3, Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended, and is eligible to participate in the medical service plan operated by the plaintiff; and

(2) Whether the plan operated by the plaintiff embraces within its scope or contracts treatment by a chiropodist and entitles him to payment by the plaintiff for such treatment according to its contracts with its subscribers and the schedule of payments provided in such contracts.

Under the contracts between the plaintiff and its subscribers, in consideration of certain dues paid by them, the plaintiff agrees to pay for certain medical and surgical treatment furnished its subscribers in accordance with the contracts on the basis of a schedule of fees specified in the contracts for various medical and surgical services; a physician may become a participant in the plan by

agreeing to comply with the specified schedule of fees; and if the medical services are furnished to subscribers by a physician who does not participate, the plaintiff agrees to pay seventy five percent of the fee specified in the schedule.

The contracts between the plaintiff and its subscribers and the specified fees are subject to supervision by the Insurance Commissioner of West Virginia and they have been approved by that official. The contracts do not expressly cover services furnished by chiropodists and services by them were not taken into consideration when the rate of the dues required to be paid by subscribers was fixed by the plaintiff and approved by the insurance commissioner. The plaintiff asserts that if its plan should be extended to cover treatment by chiropodists it will be necessary to revise the rate of the dues in order to preserve the financial solvency of the plan as presently operated by it.

The controlling issue presented for decision is whether a duly licensed practitioner of chiropody is a duly licensed physician within the meaning of the statute under which the plaintiff has formulated and is now operating its plan. To resolve that issue it is necessary to consider and apply the statutory provisions which relate to the plan and the members of the professions eligible or ineligible to participate in it.

Section 1, Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended, relating to hospital and medical service corporations contains these provisions:

"In view of the desirability of making available to the people of the state increased hospital and medical services on a distributive cost basis, the declared policy of the Legislature in the enactment of this article is to encourage the organization, promotion and expansion of hospital service corporations and medical service corporations by exempting them from the payment of all

taxes and from the operation of the general insurance laws of the state, but at the same time subjecting them to such regulation as may be necessary for the adequate protection of those members of the public who subscribe for the services offered by such corporations."

Section 2 of the same statute provides in part:

"(4) 'Medical service corporation' shall mean a non-profit, nonstock corporation, organized in accordance with the provisions of article one of this chapter for the sole purpose of contracting with the public and with duly licensed physicians for medical service to be furnished to subscribers under terms of their contract with the corporation, and controlled by a board of directors, the majority of whom are duly licensed physicians.

"(5) 'Medical service' shall mean only such medical and surgical care, to be provided by duly licensed physicians, or such payment therefor, as may be specified in the contract made by the subscriber with the corporation."

Section 1, Article 2A, Chapter 97, Acts of the Legislature, 1949, Regular Session, Section 1, Article 2A, Chapter 30, Michie's Code, 1955, Annotated, contains these provisions:

"There is hereby created a medical licensing board to be known as 'The Medical Licensing Board of West Virginia.'

"The medical licensing board shall consist of eleven members. One of such members shall be the state director of health ex officio whose term as such member shall continue for the period that he holds office as state director of health. The other ten members shall be appointed by the governor with the advice and consent of the senate. * * *

"Of the members to be appointed by the governor, six shall be physicians or surgeons holding the degree of doctor of medicine, two shall be chiropodists, and two shall be chiropractors. * * *

"The chiropodists who are members of the medical licensing board, shall participate in its proceedings and vote as members of the board only on matters pertaining to the licensure, examination, or suspension, revocation, or reinstatement of the licenses of chiropodists.

"The chiropractors who are members of the medical licensing board, shall participate in its proceedings and vote as members of the board only on matters pertaining to the licensure, examination, or suspension, revocation or reinstatement of the licenses of chiropractors. * * *."

Section 2, Article 3, Chapter 30, Code, 1931, as amended, to the extent here pertinent, defining the practice of medicine and surgery, provides:

"The term 'practice medicine and surgery,' as used in this article, shall be construed to mean the treatment of any human ailment or infirmity by any method. To open an office for such purpose or to announce to the public in any way a readiness to treat the sick or afflicted shall be deemed to engage in the practice of medicine and surgery within the meaning of this article: *Provided, however,* That the provisions of this article, with the exceptions of sections eight and ten, shall not apply to dentists, dental hygienists, nurses, optometrists, chiropodists, osteopathic physicians and surgeons, mid-wives, or chiropractors, regularly licensed or registered as such under the provisions of this chapter applicable to such professions and occupations, in the practice of their respective professions and occupations; * * *."

Section 8 of the same article relates to division of fees between a physician or a surgeon and any other physician or surgeon or other person who brings, sends or recommends a patient to such physician or surgeon, without the previous express knowledge and consent of the person who pays such fee or against whom it is charged; and section 10 prohibits the issuance, publishing or use of any false diploma or certificate of any medical school, college or institution of medicine.

Section 3 of the same article provides that "The medical licensing board of West Virginia shall examine all qualified applicants for license to practice medicine and surgery in this state, and issue certificates of license to all applicants who are legally entitled to receive the same; * * *."

Section 4 of the same article, relating to the practice of medicine and surgery, contains these provisions: "The following persons and no others shall hereafter be permitted to practice medicine and surgery in this state: (a) All such persons as shall be legally entitled to practice medicine and surgery in this state at the time of the adoption of this act; (b) all such persons as shall be graduates of class 'A' medical schools * * *; ** (c) all such persons as shall be graduates of foreign medical schools whose diplomas have been authenticated by the medical licensing board, and whose premedical education shall meet the requirements of clause (b) above, and who, being citizens of the United States, shall have resided in this state for at least three years immediately preceding application for license, and who shall be recommended by the medical societies of the counties in this state in which they respectively reside as possessing the learning and experience requisite to the practice of medicine and surgery, and who shall pass an examination before the medical licensing board and shall receive a certificate therefrom as hereinafter provided: * * * ; (d) any person who shall have graduated from a medical school on or after January first, one thousand nine hundred thirty-nine, and who has met all the requirements of law pertaining to education and training entitling such person to an examination by, and subsequent license from, the appropriate state board or agency for the practice of medicine and surgery in this state, * * * ."

By Section 1, Article 14, Chapter 30, Code, 1931, as amended by Chapter 151, Acts of the Legislature, 1951, Regular Session, "Osteopathic physicians and surgeons licensed hereunder shall have the same rights and privi-

leges as physicians and surgeons of other schools of medicine with respect to the treatment of cases or the holding of health offices or offices in public institutions." *Vest* v. *Cobb,* 138 W. Va. 660, 76 S. E. 2d 885.

In *State* v. *Morrison,* 98 W. Va. 289, 127 S. E. 75, in which the defendant, who treated sick and afflicted persons by adjustment of the segments of the spinal column according to the chiropractic method of treating human ailments and infirmities, was indicted for and convicted of the offense of practicing medicine and surgery without a State license, and in *Vest* v. *Cobb,* 138 W. Va. 660, 76 S. E. 2d 885, this Court quoted and approved the definition of the practice of medicine stated in *Commonwealth* v. *Zimmerman,* 221 Mass. 184, 108 N. E. 893, Ann. Cas. 1916A, 858, that "Medicine relates to the prevention, cure and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition. It includes a broad field. It is not confined to the administering of medical substances or the use of surgical or other instruments. It comprehends 'a knowledge, not only of the functions of the organs of the human body, but also of the diseases to which these organs are subject, and of the laws of health and the modes of living which tend to avert or overcome disease, as well as of  the  specific methods of treatment that are most effective in promoting cures.' "

Section 2, Article 11, Chapter 30, Code, 1931, relating to chiropodists, contains these provisions:

"For the purpose of this article 'chiropody' shall mean the medical, mechanical or surgical treatment of the ailments of the human hand or foot, except the amputation of the foot, hand, toes or fingers, without the use of anaesthetics other than local. It shall also include the fitting or recommending of appliances, devices or shoes for the correction or relief of minor foot ailments.

"Licensees under this article shall not use the title

'doctor,' except in connection with the word chiropody or chiropodists."

Consideration of the applicable provisions of the quoted statutes indicates clearly that a duly licensed physician or surgeon is authorized to practice medicine and surgery to the full extent of the meaning expressly given those terms of the treatment of any human ailment or infirmity by any method, and that a duly licensed chiropodist, though authorized to treat medically, mechanically and surgically without the use of anaesthetics other than local, the ailments of the hand or foot, except the amputation of the foot, hand, toes or fingers, and to fit and recommend appliances for correction or relief of minor foot ailments, is limited to those areas and those ailments in the practice of medicine and surgery. A duly licensed physician and surgeon, within the scope of the broad field in which he is authorized to practice may, of course, engage in the practice of chiropody; but it is manifest that a duly licensed chiropodist may not practice medicine and surgery except within the limits expressly imposed by the statute. That chiropody, in the opinion of the medical profession, is not a broad or unlimited field of medical or surgical practice is indicated by a report to the House of Delegates of the American Medical Association, in 1939, by Dr. George Edward Follansbee, Chairman of the Judicial Council of the House of Delegates, referred to in the brief of counsel for the defendants, which states that chiropody is not a "cult practice" but "is rather a practice ancillary — a hand maiden — to medical practice in a limited field considered not important enough for a doctor of medicine to attend" and that it satisfies a gap in medical care which the medical profession has failed to fill.

Section 2, Article 11, Chapter 30, Code, 1931, excludes duly licensed chiropodists from the category of duly licensed physicians and surgeons by forbidding chiropodists to use the title "doctor" except in connection with the word "chiropody or chiropodist." Section 2,

Article 3, Chapter 30, Code, 1931, as amended, broadly defining the practice of medicine and surgery as the treatment of any human ailment or infirmity by any method, expressly states that the provisions of Article 3, except the provisions of Sections 8 and 10 of that article, shall not apply to regularly licensed or registered dentists, dental hygienists, nurses, optometrists, chiropodists, osteopathic physicians and surgeons, midwives, or chiropractors, in the practice of their respective professions and occupations, and that language of that section indicates the exclusion of duly licensed chiropodists from the category of duly licensed physicians.

In view of the foregoing, it is clear that a duly licensed chiropodist is not a duly licensed physician within the meaning of clauses (4) and (5) of Section 2, Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended, Section 2, Article 13, Chapter 31, Michie's Code, 1955, Annotated, and is not eligible to participate in the plan of a medical service corporation for medical and surgical care furnished by duly licensed physicians to its subscribers under the terms of their contracts with such corporation. Under clauses (4) and (5), Section 2, Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended, a medical service corporation is authorized to contract with the public and duly licensed physicians only for such medical and surgical care as may be furnished by duly licensed physicians and for the payment for such service as may be specified in the contracts made by its subscribers with such corporation; and the exclusion from such contracts of any charge made by a duly licensed chiropodist for treatment which he has furnished to any of the subscribers of such corporation is proper.

The provisions of clauses (4) and (5) of Section 2, Article 13, Chapter 5, Acts of the Legislature, 1946, Extraordinary Session, as amended, relating to medical service to be furnished by duly licensed physicians are clear and free from ambiguity and are not subject to

judicial interpretation. When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the court. In such case it is the duty of the courts not to construe but to apply the statute. *State* v. *Abdella,* 139 W. Va. 428, 82 S. E. 2d 913; *Lane* v. *Board of Trustees of Employees' Retirement and Benefit Fund,* 139 W. Va. 878, 82 S. E. 2d 179; *State* v. *Chittester,* 139 W. Va. 268, 79 S. E. 2d 845; *State ex rel. Mountain Fuel Company* v. *Trent,* 138 W. Va. 737, 77 S. E. 2d 608; *Appalachian Electric Power Company* v. *Koontz,* 138 W. Va. 84, 76 S. E. 2d 863; *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 319; *State* v. *Epperly,* 135 W. Va. 877, 65 S. E. 2d 488; *Raynes* v. *Nitro Pencil Company,* 132 W. Va. 417, 52 S. E. 2d 248; *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740; *The Baird-Gatzmer Corporation* v. *Henry Clay Coal Company,* 131 W. Va. 793, 50 S. E. 2d 673; *State ex rel. Department of Unemployment Compensation* v. *Continental Casualty Company,* 130 W. Va. 147, 42 S. E. 2d 820; *State ex rel. McLaughlin* v. *Morris,* 128 W. Va. 456, 37 S. E. 2d 85; *Barnhart* v. *State Compensation Commissioner,* 128 W. Va. 29, 35 S. E. 2d 686; *State* v. *Conley,* 118 W. Va. 508, 190 S. E. 908; *Pettry* v. *State Compensation Commissioner,* 111 W. Va. 409, 163 S. E. 16; *State* v. *Patachas,* 96 W. Va. 203, 122 S. E. 545; *State* v. *Crawford,* 83 W. Va. 556, 98 S. E. 615. Whether those plain and unambiguous statutory provisions, in limiting their application to medical service to be furnished by duly licensed physicans, are wise or desirable, or unwise or undesirable, or whether they should be broadened and extended to apply to duly licensed practitioners of chiropody or duly licensed members of other professions and occupations, is a matter of policy and is not for judicial determination. The remedy for such a situation, if need of a remedy there be, may be obtained from the Legislature but not from the courts. On this point, in giving effect to a plain and unambiguous statute, in *Vest* v. *Cobb,* 138 W. Va. 660, 76 S. E. 2d 885, this Court said: "This Court should not, and will not, control the policy of the Legislature in the valid exercise of the police power of the

State pertaining to the public health. Our duty is simply to interpret the statutes of this State when they involve inconsistent provisions, and to apply the statutes when they are clear and unambiguous; * * ." See *Lane* v. *Board of Trustees of Employees' Retirement and Benefit Fund,* 139 W. Va. 878, 82 S. E. 2d 179; *State ex rel. Mountain Fuel Company* v. *Trent,* 138 W. Va. 737, 77 S. E. 2d 608; *Tweel* v. *West Virginia Racing Commission,* 138 W. Va. 531, 76 S. E. 2d 874, appeal dismissed 346 U. S. 869, 74 S. Ct. 123, 98 L. ed. 379; *Wilson* v. *Hix,* 136 W. Va. 59, 65 S. E. 2d 717; *Slack* v. *Jacob,* 8 W. Va. 612.

The questions certified are answered in the negative and the action of the circuit court in overruling the demurrer to the answer of the defendants is reversed.

*Ruling reversed.*