CHARLES TOWN RACEWAY, INC.

*v.*

WEST VIRGINIA RACING COMMISSION, *et al.*

(No. 10921)

Submitted October 1, 1957. Decided December 10, 1957.

*Bibby & Good, Albert F. Good,* for relator.

*W. W. Barron, Attorney General, Gene Hal Williams,* Assistant Attorney General, for respondents.

RILEY, PRESIDENT:

Charles Town Raceway, Inc., a West Virginia corporation, invoking the original jurisdiction of this Court in mandamus, impleaded the West Virginia Racing Commission, a statutory corporation created and existing under the provisions of Chapter 71, Acts of the Legislature, Regular Session, 1935, as amended and reenacted by Chapter 13, Acts of the Legislature, Regular Session, 1956, hereinafter designated as "Article 23"; and James G.

McClure, William D. Poland, and Malcolm J. Lowe, as members of the commission. In the petition the petitioner prays for a writ of mandamus, commanding the respondents to take the following action:

(1) To make the effective date of the construction permit issued by the respondent commission to the petitioner the 26th day of April, 1957;

(2) To remove from the construction permit the limitations, which the respondents have endeavored to impose thereon, embodied in Chapter 95, Acts of the West Virginia Legislature, Regular Session, 1957, (1957 Supplement to Michie's West Virginia Code of 1955, Chapter 19, Article 24, Section 6-a), or in the event of the failure of this Court to require the respondents so to do, then in the alternative to extend the life of the said construction permit for an additional period of three months commencing on the date of the entry of such extension order; and

(3) To remove from the construction permit the limitation, which the respondents have endeavored to impose thereon, restricting the horse racing to be conducted on the said race track of the petitioner to night harness racing.

Thereafter, the respondents filed an answer, and by agreement of the parties "A Stipulation of Facts" was filed in this proceeding.

From the uncontroverted allegations of the petition, the answer of the respondents, and the stipulation of facts, it appears that on June 17, 1955, the petitioner filed its application under the provisions of Chapter 112, Acts of the Legislature, Regular Session, 1953, which for convenience will be hereinafter referred to as "Article 24", seeking for authority to construct and operate a race track for "harness racing" in Jefferson County, West Virginia. On July 19, 1955, the commission held a hearing on this application.

In paragraph three of the petition herein it is alleged that at the hearing the application was amended by verbal

agreement between the respondent commission and the petitioner, so as to broaden the request thereby to include "flat", as well as harness racing. Though not expressly denied by the answer, this allegation concerning the amendment of the application is not admitted by the respondents.

In support of the theory that petitioner's application was amended at the hearing, the petitioner filed the affidavits of Ralph F. LePore, who was Chairman of the West Virginia Racing Commission at the time of the first hearing on July 19, 1955, and as such chairman presided at the hearing; of Arden Curry, who at the time of the hearing was an Assistant Attorney General of the State of West Virginia, and who in that capacity represented the racing commission at said hearing as its attorney; and of Sidney Poller, secretary of the petitioner herein, Charles Town Raceway, Inc. The affidavits of LePore and Poller establish that the members of the West Virginia Racing Commission as then constituted were doubtful that they possessed the authority, under the statute creating the West Virginia Racing Commission and providing for the grounds upon which it would operate, to grant a construction permit for a race track which was to be devoted solely to harness racing; and openly raised that question at the time of the hearing, suggesting that petitioner might at a future time wish to conduct flat, as well as harness racing at its proposed track. It is contended by the petitioner that in view of this consideration the commission issued the petitioner a construction permit, which was unlimited as to the type of racing which would be conducted at its track. No formal amendment of the application appears on the records of the commission, but it is contended by the petitioner that such amendment was, in view of the discussion which occurred at the hearing on July 19, 1955, assumed by all parties present. These facts are confirmed only in part by the affidavit of Arden Curry, who states in his affidavit that he does not recall the ultimate outcome of the discussion. Nevertheless, on the date of the hearing "tentative approval" was granted to

the petitioner to proceed with such construction, as such construction might be indicated by the order of the commission, entered on July 19, 1955, which contained no restriction regarding the type of racing to be conducted at the proposed track.

Within sixty days after the hearing on July 19, 1955, a petition, signed by the requisite number of voters, was filed in the County Court of Jefferson County, West Virginia, under the provisions of the statute, and in pursuance thereof a local option election was held in Jefferson County on May 8, 1956, at which the construction of the proposed race track was approved by the voters of that county, by a vote of 2,759 to 2,402, and the results of the option election were certified to the commission on May 11, 1956.

Thereupon, the petitioner proceeded to take steps leading to the eventual construction of its proposed race track. A tract of land, containing one hundred thirty-nine acres, and located on State Route No. 9 in Jefferson County, was acquired in August, 1957, at a cost of $27,500.00. This was denied in respondents' answer, but is established by the stipulation of facts in the following particulars: Sidney Poller, a promoter and secretary of Charles Town Raceway, Inc., obtained in June, 1955, an option in his own name to purchase the tract of land, upon which the petitioner proposed to construct its race track. This option, after several renewals, was exercised on August 28, 1956, by Sports Service Corporation, which took title to the tract of land and paid the purchase price of $27,500.00. It appears that Sports Service Corporation is a concessionaire, operating on a nationwide basis, and was, and is, a subscriber to two hundred thousand shares of the capital stock of Charles Town Raceway, Inc.

Simultaneously with the exercise of the option, Sports Service Corporation entered into a written agreement with the optionee Poller, which is filed with the stipulation of facts, under which Poller, acting individually and on behalf of Charles Town Raceway, Inc., agreed to purchase

the tract from Sports Service Corporation within ninety days by paying the sum of $27,500.00, in addition to incidental expenses incurred by Sports Service Corporation in exercising the option and taking title to the land. This agreement has been renewed for additional periods of ninety days, and is still in force and effect. It also appears from the petition and stipulation of facts that the tract is still held for, and is available to, the petitioner. Further in taking steps leading to the construction of the track, there were drawn architectural plans and specifications; drawings were revised and completed; negotiations with prospective building contractors were conducted; and in January, 1957, the purchase order for construction steel was placed.

After the hearing on July 19, 1955, and pending the foregoing actions leading to the construction of the proposed race track by Charles Town Raceway, Inc., the West Virginia Legislature, at its Regular Session, 1957, enacted what is designated as "Chapter 95", which was an amendment to Article 24, and constituted a new section to be designated as "Section 6-a", entitled "Restrictions on Construction Permits", which Act of the Legislature became effective on March 4, 1957, and reads as follows:

"No construction permit which may be or has been issued under the provisions of this article shall be transferred or assigned in any manner whatsoever without the consent of the commission. When a permit is issued for construction of a race track for running, trotting or other particular type or kind of horse race meeting, the owner, holder or other person responsible for the race track constructed under such permit may not convert or change the meeting into a horse race meeting of another type or kind within one year from and after the date on which construction is completed and the first race meeting is held, whichever is the later, but may, after expiration of such one year period, convert or change the type or kind of meeting with the consent of the commission entered of record.

"The life of any construction permit issued under the provisions of this article shall be limited

to a period of three months only: *Provided, however,* That if the commission is satisfied that the holder or holders of such permit has in good faith started construction of the proposed race track, such permit may be extended for successive periods of three months each but in no event shall the aggregate time of the permit exceed a period of twenty-four months from the date of the original permit. Any construction permit issued and in effect on the effective date of this section shall be included under and controlled by the provisions of this section."

Following March 4, 1957, the effective date of the enactment into law of Section 6-a, the petitioner continued its actions leading to the construction of its race track by partially grading its land in May, 1957; by completing financing arrangements; and on June 24, 1957, had its charter amended, through the office of the Secretary of State of West Virginia, so that its authorized capital stock was increased from $200,000.00 to $500,000.00, in order to facilitate the financing of the race track. Negotiations with building contractors for construction of the track were completed. On July 26, 1957, the petitioner then being ready to commence the actual physical construction of the track itself, and evidently being uncertain as to the possible effect of Section 6-a of Article 24, filed its written request with the commission, asking that the petitioner be granted a hearing before commencing construction. In accordance therewith a hearing was held in response to the request on August 7, 1957. At the hearing on that date the petitioner requested the commission to take the following action:

"First: That the commission rule that Chapter 95, Acts of the West Virginia Legislature, Regular Session, 1957, (West Virginia Code, Chapter 19, Article 24, Section 6a) is invalid and unconstitutional so far as the retroactive feature thereof is concerned, and that it is inapplicable to this petitioner inasmuch as it is an attempt to place a retroactive limitation on a vested right previously granted;

"Second: That the commission rule that the construction permit issued by the commission to the petitioner by its order of the 26th day of April, 1957, was not retroactively effective on the 11th day of May, 1956, as the commission's order endeavored to make it, but that it was an original construction permit the effective date of which was the date of the entry of the said order;

"Third: That the commission rule that in the event the said Chapter 95, Acts of the West Virginia Legislature, Regular Session, 1957, be held to be applicable to the petitioner, an extension of three months be granted to the petitioner under the terms of such legislative enactment;

"Fourth: That the commission rule that the said construction permit issued to the petitioner was for the construction of a race track to accommodate all types of horse racing and was not restricted to the construction of a race track for harness racing only; and

"Fifth: That the petitioner be granted tentative racing dates beginning on the 10th day of May, 1958, and ending on the 10th day of October, 1958."

The commission refused to take the action requested by Charles Town Raceway, Inc., and in lieu thereof made the following rulings:

"First: That Chapter 95, Acts of the West Virginia Legislature, Regular Session, 1957, is valid and constitutional with respect to its retroactive feature and that it is applicable to this petitoner;

"Second: That the construction permit issued by the commission to the petitioner by its order of the 26th day of April, 1957, was retroactively effective on the 11th day of May, 1956, and refused to make the said construction permit effective as of the date of the entry of the order issuing it;

"Third: That the commission refused to grant, with the respondent, William D. Poland, dissenting therefrom, a 3-month extension of the construction permit of the petitioner under the provisions of Chapter 95, Acts of the West Virginia Legislature, Regular Session, 1957, ruling that they

had no right to do so inasmuch as more than three months had elapsed since the effective date of the said legislative enactment without any visible signs of material construction;

"Fourth: That the commission refused to make the said construction permit of the petitioner unconditional as far as it concerned the type of racing which was to be conducted at the track to be constructed thereunder, but imposed upon the said construction permit a new limitation which had not previously existed thereon which restricted the use of the track to be constructed thereunder to night harness racing; and

"Fifth: That the commission refused to grant the petitioner the requested tentative racing dates."

The petitioner, Charles Town Raceway, Inc., then filed its petition in mandamus in this Court.

The petitioner predicates the unconstitutionality of Section 6-a, or perhaps its inapplicability to the facts portrayed by this record, on the following grounds:

First: Section 6-a is a retroactive impairment of a contractual obligation and a vested right of the petitioner in contravention of Article 1, Section 10 of the United States Constitution and Article 3, Section 4 of the Constitution of West Virginia, and of the due process clause contained in the Fourteenth Amendment to the United States Constitution and Article 3, Section 10 of the Constitution of West Virginia;

Second: Section 6-a, in its prospective as well as its retrospective aspects, is unconstitutional as an unreasonable and improper exercise of the police power of the State in the regulation of a legitimate business in contravention of the due process clauses of the Federal and West Virginia Constitutions.

Third: Section 6-a, in its prospective as well as its retroactive aspect, is unconstitutional as an improper adoption of regulatory methods which bear no reasonable relation to the legitimate purposes of the police power to be accomplished in

contravention of the due process clauses contained in the Fourteenth Amendment of the Constitution of the United States and Article 3, Section 10 of the Constitution of West Virginia;

Fourth: The time limitations imposed by Section 6-a are discriminatory in favor of existing race track owners and against all others in violation of the equal protection clause contained in the Fourteenth Amendment to the Constitution of the United States; and

Fifth: Section 6-a, in so far as it undertakes to act retroactively, is unlawfully discriminatory as between the petitioner and those who may thereafter apply for a construction permit under Chapter 112, Article 24, Acts of the Legislature, 1953, as amended by Chapter 95, Article 24, Section 6-a, in violation of the equal protection clauses of the Constitution of the United States and the West Virginia Constitution.

Section 6-a of the applicable statute is clear and unambiguous; therefore, it should be applied and not construed. In *State v. Patachas*, 96 W. Va. 203, 122 S. E. 545, it was held in point 3 of the syllabus that: "Where the language of a statute is free from ambiguity and the intent is plain, there is no occasion for interpretation by a court. 'It is not allowable to interpret what has no need of interpretation.'" See also Lewis' Sutherland Statutory Construction, Section 367. To the same effect see *State ex rel. McLaughlin v. Morris*, 128 W. Va. 456, 37 S. E. 2d 85; *State ex rel. Department of Unemployment Compensation v. Continental Casualty Co.*, 130 W. Va. 147, 42 S. E. 2d 820; *Hereford v. Meek*, 132 W. Va. 373, 52 S. E. 2d 740; *State v. Epperly*, 135 W. Va. 877, 65 S. E. 2d 488; *Douglass v. Koontz*, 137 W. Va. 345, 71 S. E. 2d 319; *Hockman v. Tucker County Court*, 138 W. Va. 132, 75 S. E. 2d 82; *State ex rel. Ward v. Raleigh County Court*, 138 W. Va. 551, 76 S. E. 2d 579; *Cawley v. Board of Trustees of Firemen's Pension or Relief Fund of the City of Beckley*, 138 W. Va. 571, 76 S. E. 2d 683; *Appalachian Electric Power Co. v. Koontz*, 138 W. Va. 84, 76 S. E. 2d 863; *Flesher v. Board of Review, West Virginia Department of Veterans Affairs*, 138 W. Va. 765, 77 S. E. 2d 890; *State v. Chittester*, 139 W.

Va. 268, 79 S. E. 2d 845; *Medical Care, Inc.* v. *Chiropody Association of W. Va.*, 141 W. Va. 741, 93 S. E. 2d 38.

If the language of a statute is fairly susceptible of two constructions or applications, under one of which it is valid and under the other invalid, such construction or application sustaining the validity of the statute should be adopted. *Slack* v. *Jacobs,* 8 W. Va. 612. And further all reasonable presumptions must be indulged in favor of the validity of an unambiguous Act of the Legislature, and to apply such Act to the facts of the case under consideration so as not to render the Act unconstitutional. *State* v. *Sims,* 122 W. Va. 29, 7 S. E. 2d 54; 17 M. J., Statutes, Section 29.

Initially, we are of opinion from the discussion which occurred at the hearing on July 19, 1955, that the petitioner effectively amended its written application for a construction permit so as to include both flat and harness racing. We are further of the opinion that the racing commission has no power, as it attempted to do, to enter a retroactive order, but as the petition was effectively amended and the option was submitted to the electorate of Jefferson County to approve a construction permit for both flat and harness racing, the commission then and there had the ministerial duty to issue a construction permit for both types of racing. Were we to hold otherwise would render Section 6-a unconstitutional in part, if not entirely.

It cannot be gainsaid that the State under its police power may regulate or prohibit horse racing, where parimutuel wagering is permitted. See *State* v. *West Virginia Racing Commission,* 133 W. Va. 179, 192, 55 S. E. 2d 263, in which at page 192, this Court employed the following language, which was quoted with approval in *Tweel* v. *West Virginia Racing Commission,* 138 W. Va. 531, 76 S. E. 2d 874: "There cannot, in our opinion, be any doubt as to the power of the Legislature to regulate horse racing, nor does there seem to be any contention on that point. Whatever may be said in favor of horse racing, and much

can be said, it must be admitted that great evil attends its practice, such as calls for the intervention of the State, under its police power, to the end that such evil be minimized so far as it is possible to do so. This intervention and control is exercised under the police power of the State, and the use of that power rests with the Legislature. The police power is broad and sweeping, inherent in sovereignty and, except as restricted by constitutional authority, or natural right, which, in effect, is unlimited * * *."

We are of opinion that as soon as the results of the local option election were filed with the commission, it then and there became the ministerial duty of the commission to issue a construction permit for a race track which would be adaptable to both flat and harness racing. This the commission should have done *ex mero motu* in furtherance of the ministerial duty then and there imposed upon it by the mandate of the electorate of Jefferson County. The commission not having done so, we hereby issue a peremptory writ of mandamus, commanding the commission to issue a construction permit in accordance with the petitioner's application, as amended, which permit is to extend for three months from the date of the mandate of this Court, with opportunity to the petitioner to obtain further extension of time of three-month periods, not to exceed a period of twenty-four months, within which to complete the construction of its proposed race track.

*Writ awarded.*