302 S.E.2d 78

**David R. ATCHINSON, et al.**

v.

**Willard ERWIN, et al., etc.**

**No. 15723.**

Supreme Court of Appeals of West Virginia.

March 25, 1983.

J. David Cecil, Cecil, Pearson & Barth,
Leo Catsonis, Charleston, for appellants.

Richard L. Earles, Asst. Atty. Gen., Charleston, for appellees.

MILLER, Justice:

The appellants, who are inspectors and supervisors of the Water Resources Division of the Department of Natural Resources (DNR), appeal from an adverse decision of the Circuit Court of Kanawha County. The appellants claim that the circuit court erred in holding that a 1976 amendment to W.Va.Code, 20–6–5, which set a salary increase for the appellants' counterparts in the Surface Mining Reclamation Division of the DNR could not be read to provide the same increase for the appellants. The appellants maintain that if the statute is not interpreted to include them, then it violates the equal pay for equal work provisions of the civil service statute. They also assert that the amendment was a special act, which violates Section 39 of Article VI of the West Virginia Constitution. We affirm the circuit court's ruling.

It is not disputed that, prior to 1976, the appellants were under civil service and were classified with the surface mine inspectors and supervisors of the Reclamation Division of the same department. In 1976, the Legislature enacted an amendment to the Surface Coal Mining and Reclamation Act, which expanded coverage of the reclamation law and placed additional duties on reclamation inspectors. Another amendment increased the compensation of the surface mine inspectors and supervisors of the Reclamation Division as follows: "Every surface-mining reclamation supervisor or inspector shall be paid not less than fifteen thousand dollars per year." W.Va.Code, 20–6–5 (1976).

In order to comply with the new legislation, the DNR proposed, and on May 20, 1976, the Civil Service Commission approved, a new classification and salary level for the surface mine inspectors and supervisors of the Reclamation Division. The "conservation inspector II" position, formerly held by both Reclamation Division employees and Water Resources Division employees, was discontinued in the Reclamation Division and the new position of "surface mine inspectors and supervisors" was created.

The appellants challenged the reclassification order, and, upon a lack of response by the Civil Service Commission, filed suit in circuit court against the Commission, its members, and the director of the DNR. The appellants offered affidavits and other evidentiary material indicating that the reclassification was not based upon any distinction between the qualifications or duties of the Water Resources Division's and those of the Reclamation Division's inspectors and supervisors. They argued that the reclassification as proposed and implemented by the Commission, was instituted solely to comply with the 1976 legislation increasing the salaries of the latter group. Affidavits and depositions submitted by the appellees indicated that the qualifications and duties of the Reclamation Division's inspectors and supervisors had increased significantly by virtue of the added jurisdiction imposed by W.Va.Code, 22–2–63(g),[1] while the qualifications and duties of the appellants had not. The circuit court was persuaded by the appellees' evidence of additional duties, requirements and qualifications, and held that the Civil Service Commission's reclassification was not in error.

The question of whether the Legislature may enact a specific pay increase for certain civil service employees, where those employees have been given enhanced duties, has received little attention in the courts. We are not cited nor have we found a case in point. While the appellants argue that the Civil Service Commission violated the equal pay for equal work provision of W.Va.Code, 29–6–10(2) (1977),[2] it

1. In effect 1976–1980; now *see* W.Va.Code, 20–6–9 and 14.

2. The material portion of W.Va.Code, 29–6–10(2), is:

"The commission shall have the authority to promulgate, amend or repeal rules, in accordance with chapter twenty-nine-A [§ 29A–1–1

is clear from the record that the Civil Service Commission's reclassification was perfunctory and was made in order to comply with the statutory amendment increasing the pay to $15,000 per year.

■ The appellants argue that the civil service statutory requirement of equal pay for equal work should have required the Commission to include the appellants in the increased pay reclassification by reading the pay provision of W.Va.Code, 20–6–5 (1976), *in pari materia* with the equal pay provision of W.Va.Code, 29–6–10(2). This argument ignores two basic problems. First, the pay provision refers only to every "surface-mining reclamation supervisor or inspector" as receiving the salary of $15,000 per year. The concept of reading statutes *in pari materia* begins with the premise that they relate to the same subject. *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981); *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Thus, in Syllabus Point 5 of *Commercial Credit Corp. v. Citizens National Bank*, 148 W.Va. 198, 133 S.E.2d 720 (1963), we said:

"Statutes relating to different subjects are not in pari materia."

*See also* Syllabus Point 2, *State ex rel. Miller v. Sencindiver*, 166 W.Va. 355, 275 S.E.2d 10 (1980). Furthermore, we believe that even if the pay provision in W.Va. Code, 20–6–5 (1976), had some relationship to the equal pay provisions of the civil service statute, the pay statute is a special act which is ordinarily entitled to preference over a general statute. *State ex rel. Sahley v. Thompson*, 151 W.Va. 336, 151 S.E.2d 870 (1966); 2A Sutherland, Statutes and Statutory Construction § 51.05 (Sands 4th ed. 1973).

■ Finally, the circuit court found that there had been increased duties placed on the surface mining reclamation personnel as a result of the 1976 amendments to the Surface Coal Mining and Reclamation Act. Therefore, the personnel of the two divisions were no longer assigned similar or equal work, and the civil service provision relating to equal pay for equal work was not applicable.[3]

■ The ability of the Legislature to enact changes to the State Civil Service System was settled in *Baker v. Civil Service Commission*, 161 W.Va. 666, 245 S.E.2d 908 (1978). At issue in *Baker* was an enactment abolishing the Office of Federal-State Relations whose employees were covered under civil service. One of the terminated employees challenged the validity of the statute on a number of grounds foreign to the issues raised here, but in the course of rejecting his claims, we said in Syllabus Point 2:

"The Legislature has the power to make changes in its public employment, including the Civil Service System, which changes result in either abolishing positions or diminishing the economic rights of civil service employees."

We did, however, in *Baker* recognize that there were some limits on the legislative power:

"In [*State ex rel. Musick v. Londeree*, 145 W.Va. 369, 115 S.E.2d 96 (1960)], it was suggested that the legislative action could not be arbitrary or done in bad faith. Certainly, if the legislative enactments created an impermissible classification under the Equal Protection Clause or violated substantive due process principles of our State and Federal Constitutions, it could not stand. *See, e.g., Moore v. City of East Cleveland*, 431 U.S. 494,

et seq.] of this Code, to implement the provisions of this article.

* * * * * *

"(2) For a pay plan for all employees in the classified service, after consultation with appointing authorities and the state fiscal officers, and after a public hearing held by the commission. Such pay plan shall become effective only after it has been approved by the governor after submission to him by the commission. Amendments to the pay plan may be made in the same manner. Each employ-

ee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed. The principle of equal pay for equal work in the several agencies of the state government shall be followed in the pay plan as established hereby."

**3.** Because enhanced responsibility was found to be given to surface mining reclamation personnel, we need not explore in depth the equal pay provision of W.Va.Code, 29–6–10(2).

97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977)." 161 W.Va. 666, 245 S.E.2d at 913.

■ The appellants' main attack in this area is that the pay increase given to the surface mining reclamation personnel constitutes special legislation under Section 39 of Article VI of the West Virginia Constitution.[4] In applying Section 39 of Article VI, we have recognized that "a basic purpose ... is to preserve uniformity and consistency in the statutory enactments." Syllabus Point 1, in part, *State ex rel. Taxpayers Protective Association of Raleigh County v. Hanks*, 157 W.Va. 350, 201 S.E.2d 304

(1973).[5] It can be readily seen that Section 39 of Article VI is divided into two categories. The first is a list of eighteen "enumerated cases" in which "[t]he legislature shall not pass local or special laws." W.Va.Const. art. VI, § 39. The second category contains the more general provision:

"[A]nd in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for."

■ The first step in determining whether a statute violates Section 39 of Article VI of our Constitution is to ascertain whether it is general or special legislation. If it is a general statute, it does not violate this constitutional provision and further in-

---

4. Section 39 of Article VI of the West Virginia Constitution provides:

"The legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for

"Granting divorces;

"Laying out, opening, altering and working roads or highways;

"Vacating roads, town plats, streets, alleys and public grounds;

"Locating, or changing county seats;

"Regulating or changing county or district affairs;

"Providing for the sale of church property, or property held for charitable uses;

"Regulating the practice in courts of justice;

"Incorporating cities, towns or villages, or amending the charter of any city, town or village, containing a population of less than two thousand;

"Summoning or impaneling grand or petit juries;

"The opening or conducting of any election, or designating the place of voting;

"The sale and mortgage of real estate belonging to minors, or other under disability;

"Chartering, licensing, or establishing ferries or toll bridges;

"Remitting fines, penalties or forfeitures;

"Changing the law of descent;

"Regulating the rate of interest;

"Authorizing deeds to be made for land sold for taxes;

"Releasing taxes;

"Releasing title to forfeited lands.

"The legislature shall provide, by general laws, for the foregoing and all other cases for which provision can be so made; and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction,

and are competent to give the relief asked for."

5. In *State ex rel. Taxpayers Protective Association of Raleigh County v. Hanks*, 157 W.Va. at 353, 201 S.E.2d at 306, we quoted the remarks of A.D. Soper, President of the First Constitutional Convention, to this effect:

"[I]n all practicable cases, the legislature is required to act by general laws. This obviates, to a great extent, the necessity for special legislation, and discourages that private solicitation of the members, the tendency of which is to introduce corruption and bribery as elements of legislation." Volume III, Debates and Proceedings of the First Constitutional Convention of West Virginia, 831.

Our constitutional provision is not unique. In Cloe & Marcus, *Special and Local Legislation*, 24 Ky.L.J. 351 (1936), it is pointed out that the vast majority of states have some type of restriction on special legislation. They attribute the passage of such restrictions to the enormous increase in special legislation occurring in the middle and latter parts of the Nineteenth Century by state legislatures: "Immediately prior to constitutional limitations, in Kentucky of two thousand enactments less than a hundred and seventy were general. By 1859 in Missouri 87% of the legislation was special or local. While these may be extremes, serious proportions had been reached in other states." *Id.* at 356. (Footnotes omitted) They also conclude that "[t]he primary purpose of these constitutional provisions was to secure uniformity in law." *Id.* at 358. *See also* Horack, *Special Legislation: Another Twilight Zone*, 12 Indiana L.J. 109 (1936); Comment, *Validity of Special Acts When A General Law Already Exists*, 70 W.Va.L.Rev. 114 (1967); Note, *Special Legislation in West Virginia*, 39 W.Va.L.Q. 255 (1933).

quiry is unnecessary. If further inquiry is necessary, we are guided by the general rule of constitutional construction that favors the constitutionality of legislation. This rule is stated in Syllabus Point 8 of *State ex rel. Heck's, Inc. v. Gates,* 149 W.Va. 421, 141 S.E.2d 369 (1965):

"The well settled general rule is that in cases of doubt the intent of the Legislature not to exceed its constitutional powers is to be presumed and the courts are required to favor the construction which would consider a statute to be a general law."

*See also State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

We have formulated the following standard to determine if a statute is general in nature in Syllabus Point 2 of *State ex rel. Taxpayers Protective Association of Raleigh County v. Hanks, supra:*

"A statute is general when it operates uniformly on all persons and things of a class and such classification is natural, reasonable and appropriate to the purpose sought to be accomplished."

*See also State ex rel. Heck's, Inc. v. Gates, supra; State ex rel. Plymale v. City of Huntington,* 147 W.Va. 728, 131 S.E.2d 160 (1963).

The determination of whether a statute is general is essentially a classification analysis, and thus we have utilized constitutional equal protection concepts in addressing whether a statute is general or special. In Syllabus Point 7 of *State ex rel. Heck's, Inc. v. Gates, supra,* we said:

"The constitutional requirement that a law be general does not imply that it

must be uniform in its operation and effect in the full sense of its terms. If a law operates alike on all persons and property similarly situated, it is not subject to the objection of special legislation or class legislation and does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States."

*See also Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978); *Cimino v. Board of Education of County of Marion,* 158 W.Va. 267, 210 S.E.2d 485 (1974).

We need not for the purpose of this case determine the full extent to which our equal protection concepts are parallel to the special statute prohibition found in Section 39 of Article VI of our Constitution.[6] It is sufficient for purposes here to note that the statute in this case is economic (providing as it does a pay increase), and therefore it does not involve fundamental or constitutional rights. Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution. *Shackleford v. Catlett, supra; Cimino v. Board of Education of County of Marion, supra.*

In the present case, the pay statute has a legitimate governmental purpose and is based on a rational economic policy. Both of these factors are evident from the

---

**6.** Historically, we have followed the United States Supreme Court's test for our equal protection analysis. Where fundamental or constitutional rights are involved it must be shown that a compelling state interest is served by the classification. In all other cases the statutory classification must be deemed to bear some rational relationship to legitimate state purposes. In considering the rationality,

"[T]he court must consider whether the classification is a rational one based on social, economic, historic or geographical factors; whether the classification bears a reasonable relationship to a proper governmental pur-

pose; and whether all persons within the classes established are treated equally." *Cimino v. Board of Education of County of Marion,* at 158 W.Va. 274–75, at 210 S.E.2d 490.

*See also Shackleford v. Catlett, supra; State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977). A number of other courts have applied equal protection concepts to their constitutional prohibition against special legislation. *E.g., State v. Lewis,* 559 P.2d 630 (Alaska 1977); *Anderson v. Wagner,* 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979); *Paul Kimball Hospital v. Brick Township Hospital, Inc.,* 86 N.J. 429, 432 A.2d 36 (1981).

fact that the 1976 amendment to the Surface Coal Mining and Reclamation Act resulted in increased duties to the surface mine inspectors and supervisors, which rationally resulted in the need for an increase in their pay. There can be no question that all persons within the class were treated equally. The appellants, who are personnel in the separate Water Resources Division, are not entitled to claim class status, because they function under separate statutory authority. W.Va.Code, 20–5–1, *et seq.*

This situation bears some analogy to that in *Shackleford v. Catlett.* In *Shackleford,* a special legislation challenge was made to W.Va.Code, 23–2–1, which had been amended to permit counties to elect to obtain workmen's compensation coverage for their employees. The appellant in *Shackleford* maintained that the legislation improperly permitted the classification of employees of county courts not electing to subscribe to the funds as separate from all county employees throughout the State, who would have coverage. We rejected this argument stating: "The class of employees referred to here consists of all employees of a county court, not all employees of all county courts." 161 W.Va. 568, at 244 S.E.2d at 330.

The only case we have found that is factually close to the present case is *Waldstreicher v. Michaelian,* 52 Misc.2d 711, 276 N.Y.S.2d 758 (1967), where the legislature enacted amendments to the social welfare law to provide higher salaries for personnel with graduate training. The personnel without the qualifications contended that the law legislatively changed their civil service classification and that it was a special act. In rejecting these contentions, the court stated:

"The court is of the opinion that the salary advantage provided for under § 79–a of the Social Welfare Law does not constitute a promotion within the meaning and intent of § 52, subdivision 9, of the Civil Service Law; but even if it did, there is nothing in the Constitution which prohibits the Legislature from amending the Civil Service Law to the extent necessary to permit favored treatment to trained personnel....

\* \* \* \* \* \*

"It is also claimed that § 79–a of the Social Welfare Law is a special law and not a general law, because it does not apply in the same manner to all counties; and that it is therefore void under Article IX of the Constitution. In *Kittinger v. Buffalo Traction Co.,* 160 N.Y. 377, at page 397, 54 N.E. 1081, at page 1088, the court stated that: 'The constitutionality of a statute is not determined by matters outside of the statute, but from the statute itself.' The statute on its face applies in like manner to all political subdivisions of the State, and does not arbitrarily single out a particular community and provide it with special treatment to the exclusion of other communities similarly situated.... Accordingly, the court determines that the statute in question is a general law." 52 Misc.2d at 713, 276 N.Y.S.2d at 762–64. (Citations omitted)

There are, however, cases in other jurisdictions involving legislation which conferred an economic benefit on a limited class of individuals where the courts have rejected claims of special legislation and equal protection arguments. For example, in *Geary v. Retirement Board of Allegheny County,* 426 Pa. 254, 231 A.2d 743 (1967), the Pennsylvania Supreme Court upheld a state statute which reduced the age of eligibility for police officers' retirement to age 55 against a claim that it was special legislation because other county employees in the same retirement fund did not receive the same benefit. In concluding that there was a rational classification, the court stated:

"[T]he special hazards to which policemen's duties expose them and the greater physical fitness which policemen need to adequately discharge their duties lead us to conclude that the Legislature was well within the bounds of reasonable and constitutionally permissible classification in allowing police to become eligible for retirement allowances at an age five years younger than that of other Alle-

gheny County employees." 426 Pa. at 260, 231 A.2d at 746.

See also Davis v. Retirement Board of Policeman's Annuity Fund, 30 Ill.App.3d 318, 332 N.E.2d 446 (1975); Krebs v. Board of Trustees of Teachers' Retirement System, 410 Ill. 435, 102 N.E.2d 321 (1951).

In Board of County Commissioners for Prince George's County v. Colgan, 274 Md. 193, 334 A.2d 89 (1975), the Supreme Court rejected a special legislation and equal protection challenge to a workmen's compensation statute which separately classified paid firefighters by creating a statutory presumption that their heart disease or hypertension arose from causes related to their work. The court recognized that this was a rational classification because it applied to all paid firefighters and because they were shown to have a higher incidence of the diseases due to their occupation. See also Kaljuste v. Hennepin County Sanatorium Commission, 240 Minn. 407, 61 N.W.2d 757 (1953), which upheld legislation creating special compensation benefits for employees of state tuberculosis sanatoriums who contract the disease.

Under the foregoing law, we conclude that W.Va.Code, 20–6–5 (1976), which conferred additional pay on supervisors and employees of the Surface Mine Reclamation Division of the DNR as a result of increased work responsibilities resulting from expanded coverage of the Surface Coal Mining and Reclamation Act, does not violate the special act limitation of Section 39 of Article VI of the West Virginia Constitution.

We, therefore, affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.