376 S.E.2d 626

**STATE of West Virginia ex rel. DEPUTY SHERIFF'S ASSOCIATION, et al.**

v.

**COUNTY COMMISSION OF LEWIS COUNTY, et al.**

**No. 18796.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

James M. Wallington, Stanley M. Hostler, Hostler & Segal, Charleston, for petitioners.

BROTHERTON, Justice:

This proceeding in mandamus involves a petition by Thomas L. Moneypenny, Joseph C. Stiles, and the West Virginia Deputy Sheriff's Association, for a writ of mandamus requesting that the Court direct the County Commission of Lewis County to provide the deputy sheriffs with civil service coverage. Specifically, the petitioners challenge the constitutionality of W.Va. Code § 7–14–1 et al. (1984), which provides that civil service coverage for deputy sheriffs in counties with less than 25,000 in population is an option to be exercised at the discretion of the county commission, while coverage is mandatory for counties with populations of 25,000 or more.

Thomas L. Moneypenny is a deputy sheriff from Lewis County, a county with a population of 18,813. On March 16, 1987, Deputy Moneypenny presented a formal petition to the County Commission of Lewis County on behalf of the deputy sheriffs employed by the sheriff of Lewis County, requesting that the Commission provide them with civil service coverage pursuant to W.Va.Code § 7–14–19 (1984). The petitioners state that the County Commission of Lewis County failed to respond to that petition. The respondent maintains that it took the petition under "advisement." [1]

The petitioners note that according to the 1970 United States Census, only thirty-two counties had a population of less than 25,-000. *West Virginia Blue Book*, 1980, section 9, pages 660–773. Following the 1980 census, six counties increased their population to over 25,000, thus mandating civil service coverage. *West Virginia Blue Book*, 1981, section 9, pages 689–796. Of the remaining counties with populations of less than 25,000, three counties have voluntarily provided for civil service coverage for their deputy sheriffs. Thus, the petitioners report that currently, twenty-three counties in West Virginia do not have civil service coverage for their deputy sheriffs.

The petitioners present two issues to this Court. First, the petitioners allege that they have a property interest in uninterrupted employment, and therefore, by necessity, in the civil service coverage which guarantees that employment. Secondly, the petitioners contend that the classification found in W.Va.Code § 7–14–1 et al. (1984) bears no rational relationship to the purpose of the statute, is arbitrary and violates the constitutional guarantee of

1. The Lewis County deputy sheriffs initially tendered a formal petition for civil service coverage on February 22, 1983. The petition was denied by order of the County Commission of Lewis County on May 22, 1983. From the record, it does not appear that the petitioners appealed that order.

equal protection. The petitioners also argue that the delegation of authority by the Legislature to the respondent county commission is an unconstitutional act because the delegation did not reasonably relate to a matter of purely local concern and placed the sole, unguided discretion in the hands of the county commission as to whether to implement the general law.

## I.

The petitioners contend that the deputy sheriffs have a property interest in uninterrupted employment and thus, by necessity, in the civil service coverage which guarantees that employment. Consequently, they argue they are entitled to the constitutional guarantee of Article III, Section 10 of the West Virginia Constitution, which provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law...." Since the procedural safeguard of the due process clause is triggered by the existence of a liberty or property interest, we must first determine if the petitioners' interest rises to the level of a constitutionally protected property interest.

■ In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court addressed the question of what constituted a property interest. The Court held that:

Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement* to it.

(emphasis added). 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Thus, an individual must have a legitimate claim of entitlement to the alleged property interest before due process protection is triggered.

Any claim of entitlement to a constitutionally protected property interest is determined by state law. In *Roth*, the United States Supreme Court held that property interests were not created by the Constitution, but "rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.[2] Moreover, in *Freeman v. Poling*, 175 W.Va. 814, 338 S.E.2d 415 (1985), we held that "although a government employee may have a reasonable basis for understanding terms of his employment, those understandings cannot override state law that defines the terms of employment." *Id.* at 419.

■ The petitioners point to W.Va.Code § 6–3–2 (1987) as the basis of their claim to a property interest in the civil service coverage under state law. In pertinent part, W.Va.Code § 6–3–2 (1987) provides:

Any deputy appointed pursuant to section one of this article [§ 6–3–1], may, at any time, be removed from office by his principal, or by the court, or other tribunal in lieu thereof, by and with the consent of which he was appointed. Provided, however, That nothing herein contained, ... shall empower or be construed to authorize the removal, or revocation of appointment and confirmation of any deputy sheriff by any tribunal, officer or body whatsoever, except by the sheriff by whom he was appointed, unless *good cause* be shown for such removal, dismissal or revocation of appointment.

(emphasis added). The petitioners submit that this Code provision creates a property interest in the continuation of expected employment.

The petitioners also contend that our decision in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), supports their argument.[3] The facts in

---

**2.** In *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976), the United States Supreme Court also recognized that "[a] property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the

sufficiency of the claim of entitlement must be decided by reference to state law."

**3.** We will not discuss the petitioners' claim to a liberty interest, as it is clearly not applicable to the present situation. As we noted in *Waite,* "a

*Waite* involved a civil service employee who was denied a hearing before the Civil Service Commission after she was suspended from her job. After setting forth the analysis necessary to determine whether the petitioner's interest rose to the level of a protected liberty or property interest, we found that a civil service classified employee had a property interest arising from a statutory entitlement to continued, uninterrupted employment. *Id.* 161 W.Va. at 154, 241 S.E.2d at 165, syl. pt. 4. Therefore, we concluded that the petitioner in *Waite* was entitled to a hearing prior to suspension from her employment.

We are not persuaded by the petitioners' arguments. Although *Waite* found a property interest in continued, uninterrupted employment, we note that Ms. Waite was already a member of the civil service system. Once vested, she obtained a property interest in the continuation of the benefits and burdens of that system. However, without being a member of the civil service system, there is no entitlement to continued employment other than that guaranteed by W.Va.Code § 6–3–2 (1987). No property interest exists where the individual does not yet have a legitimate claim of entitlement to the coverage. Because the coverage is an option subject to the discretion of the county commission and, ultimately, the citizens of the county, the deputy sheriffs have only an expectation of entitlement, which is not sufficient to give rise to a property interest.[4]

In *Waite*, we determined that if no property or liberty interest existed, then no further analysis was necessary as the party had no claim which warranted constitutional protection. 161 W.Va. at 158–60, 241 S.E.2d at 167. Since we conclude the petitioners' interest does not rise to the level of a property interest, there is no need to weigh the competing interests of the State and the petitioners.

## II.

We turn now to the petitioners' second allegation that the population-based system of determining mandatory entitlement to civil service coverage violates the Fourteenth Amendment to the United States Constitution and Article VI, Section 39 of the Constitution of West Virginia. Specifically, the petitioners contend there is no rational basis for the Legislature to prohibit the mandatory application of civil service coverage for deputy sheriffs who serve counties with populations of less than 25,000.

█ The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person ... the equal protection of the laws." Article VI, Section 39 of the West Virginia Constitution provides an equal protection guarantee parallel to the federal principle. *Donaldson v. Gainer*, 170 W.Va. 300, 294 S.E.2d 103 (1982). We, therefore, are faced with the question of whether W.Va.Code § 6–3–1 et al. (1984) violates the petitioners' equal protection guarantee by making civil service coverage optional in counties of less than 25,000 in population, while mandatory in the larger counties.

In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the United States Supreme Court ruled that in cases involving an equal protection challenge and economic classifications:

> The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their

---

liberty interest is implicated when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" 161 W.Va. at 159, 241 S.E.2d at 167 (citing *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558 (1972)). In *Roth*, the Supreme Court also found that an individual has a liberty interest in being "free to move about, live and work at his chosen vocation without the burden of an unjustified label of infamy." *Id.* None of these factors have been presented in the case before us.

4. The petitioners also cite *Fraley v. Civil Service Commission*, 177 W.Va. 729, 356 S.E.2d 483 (1987), in support of their proposition. However, like the petitioner in *Waite*, *Fraley* involved an employee who was already a member of the civil service system at the time of the wrongful act of discharge and thus, the case is of limited application in this situation.

**424**

constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 U.S. 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399 (citations omitted). Similarly, this Court has held that:

The constitutional requirement that a law be general does not imply that it must be uniform in its operation and effect in the full sense of its terms. If a law operates alike on all persons and property similarly situated, it is not subject to the objection of special legislation or class legislation and does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Syl. pt. 7, *State ex rel. Heck's v. Gates,* 149 W.Va. 421, 141 S.E.2d 369 (1965). Thus, the equal protection guarantee does not prohibit legislative classification if relevant to the state's goal.

■ The petitioners contend that the State should be required to produce a compelling interest in order to justify the legislative classification. We disagree. In *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977), we held that unless the State's action violated sensitive or fundamental rights and constitutional freedoms, such as religion or speech, then the applicable standard will require the State to demonstrate a rational relationship between the classification and a legitimate State purpose.[5] As the petitioners' right to continued employment through civil service coverage does not involve constitutional freedoms or sensitive or fundamental rights, the State need only present a rational basis to justify the classification.

The present case is analogous to our decision in *Shackleford v. Catlett,* 161

W.Va. 568, 244 S.E.2d 327 (1978). In *Shackleford,* we held that W.Va.Code § 23–2–1 (1931) did not violate equal protection principles where the county courts of the State, who were not required to provide their employees with workers' compensation coverage, were given the option to subscribe to the workers' compensation fund. Specifically, we held that "[c]ontrary to the contention of the plaintiff, by permitting county courts the option to subscribe or not subscribe to the workmen's compensation fund the legislature did not deny equal protection of the law to employees of county courts electing not to subscribe to the funds, nor does this constitute objectionable special or class legislation." *Id.* 161 W.Va. at 571, 244 S.E.2d at 330.

Admittedly, W.Va.Code § 7–14–1 et al. (1984) distinguishes between counties by mandating coverage for counties with populations larger than 25,000, while permitting optional coverage in the smaller counties. Like *Shackleford,* however, we do not find that the population-based classification constitutes "objectional special or class legislation." By establishing automatic coverage for the larger counties, the Legislature clearly expressed its belief that the continuity inherent in the civil service system was necessary. We also note that the larger population counties, by definition, have a larger tax base and are better able to support the "machinery" which establishing a civil service commission would entail.

Conversely, the Legislature wisely left the option of providing civil service coverage and establishing a civil service commission to the discretion of the local county commission. Certainly the local county commission would be best able to determine the needs and financial condition of the county. To require all counties to provide civil service coverage and maintain the necessary appendages would be a waste of

---

5. In *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983), we held that:

Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution.

precious financial resources in days of a dwindling tax base. As case in point, we refer to Wirt county, which has a population of 4,922 according to the 1980 United States Census. Wirt County employs one deputy sheriff, who works only twenty hours a week. To require Wirt County to establish a civil service commission along with the rest of the smaller counties would be nothing less than absurd.

In *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the United States Supreme Court held that the equal protection clause was not violated by imperfect classifications. The Court held that "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" (citations omitted). 397 U.S. at 485, 90 S.Ct. at 1161, 25 L.Ed.2d at 501–02.[6] We recognize that some inequity may result from this population-based system. However, neither the facts presented nor the inequity are sufficient to persuade us that the population-based system is irrational and violates equal protection principles.

Lest anyone believe us unsympathetic to the deputy sheriffs' desire for uninterrupted employment, we hasten to point out that W.Va.Code § 6–3–2 (1987) already provides that a deputy sheriff can be removed from office only for good cause shown by anyone other than the sheriff who appointed that deputy. This provision clearly removes from consideration the most common scenario of which a non-civil service employee would complain—a job lost when a new sheriff is elected—since that new sheriff would need "good cause" to discharge the deputy. Further safeguards

for uninterrupted employment would perhaps be redundant as well as costly.[7]

**WRIT DENIED.**

---

(citations omitted). 172 W.Va. at 14, 302 S.E.2d at 84.

**6.** *See also State ex rel. Moody and Seckman v. Gainer,* 180 W.Va. 514, 377 S.E.2d 648 (1988), where we held that "[t]he population-based magistrate salary system, W.Va.Code § 50–1–3 (1988), does not violate the equal protection clause of either the West Virginia or United States Constitutions as applied to Lewis County

magistrates, who are classified with the small population counties, but "handle" as many cases as selected larger counties." Syllabus.

**7.** We recognize that civil service coverage may include other benefits. However, as the petitioners' argument claims only a property interest in "uninterrupted employment," we discuss only that claim.