647 S.E.2d 818

HARTLEY HILL HUNT CLUB, Nolan Aleshire, Isaac Staats, Jack Summers, and the American Civil Liberties Union of West Virginia Plaintiffs below, Appellants

v.

The COUNTY COMMISSION OF RITCHIE COUNTY, Defendant below, Appellee

and

West Virginia Farm Bureau, Inc., Fayette County Farm Bureau, Gilmer County Farm Bureau, Mercer County Farm Bureau, Nicholas County Farm Bureau, Preston County Farm Bureau, Ritchie County Farm Bureau, Summers County Farm Bureau, Wood County Farm Bureau, John L. Kessler, Walter Ashby, Arnold Smith, Chris Nash, Paul Canterbury, Thomas Keener, Hicle Rexrode, Philip L. Gregg, Danny Montgomery, Arden Hodge, Lynwood Ireland, Carl Amick, Jack H. Lester, Gary E. Oates, and David H. Lawson, Intervening defendants below, Appellees.

No. 33176.

Supreme Court of Appeals of West Virginia.

Submitted April 17, 2007.

Decided May 11, 2007.

Jason Huber, Forman & Huber, L.C., Charleston, for the Appellants.

Steven A. Jones, Prosecuting Attorney, Harrisville, for the Ritchie County Commission.

Joseph S. Beeson, David L. Yaussy, Robinson & McElwee, PLLC, Charleston, for the Intervening Appellees.

STARCHER, J.:

In this appeal from the Circuit Court of Ritchie County, we are asked to examine the constitutionality of a statute that prohibits Sunday hunting in certain circumstances. The circuit judge entered a declaratory judgment finding that the statute, *W.Va.Code*, 20–2–5(28) [2001], was constitutional.

After careful review of the briefs of the parties, the record created in the court below, and the arguments of the attorneys,[1] we too find that *W.Va.Code*, 20–2–5(28) is constitutional. As set forth below, we affirm the circuit judge's judgment.

## I.

### *Facts & Background*

In the Spring of 2001, the West Virginia Legislature amended an existing law that set out numerous hunting and fishing regulations.[2] The amendment added two subsections, both of which pertained to limitations on hunting on Sunday.

The first subsection—*W.Va.Code*, 20–2–5(27)—eliminated hunting on any *publicly-owned* land on Sundays.[3]

The second subsection—*W.Va.Code*, 20–2–5(28)—provided that each of West Virginia's fifty-five counties could hold an election to determine whether hunting on *privately-owned* land on Sundays would be prohibited.[4]

---

1. This case was argued in the Hampshire County Courthouse in Romney, West Virginia, as part of the Court's "LAWS" Program. LAWS, an acronym for Legal Advancement for West Virginia Students, is a partnership between the court system, schools, local Bars and the community. LAWS teaches high school and college students about the legal system. With the assistance of local attorneys, circuit judges and Supreme Court staff, teachers help students study the facts and law of a particular case, and then students attend the oral arguments in the case. As this case is intended to be a study tool for students, the author has done his best to remove as much "legalese" as possible to make the case more readable.

2. See *2001 Acts of the Legislature*, Chapter 270.

3. *W.Va.Code*, 20–2–5(27) [2001] states simply:
   Hunting on public lands on Sunday after five o'clock antemeridian is prohibited[.]

4. *W.Va.Code*, 20–2–5(28) [2001] states, in full:
   Except as authorized by the director [of the division of natural resources], it is unlawful at any time for any person to: . . .

   (28) Hunt, catch, take, kill, trap, injure or pursue with firearms or other implement [by] which wildlife can be taken, on private lands on Sunday after the hour of five o'clock ante-meridian: *Provided*, That the provisions of this subdivision do not apply in any county until the county commission of the county holds an election on the question of whether the provisions of this subdivision prohibiting hunting on Sunday shall apply within the county and the voters approve the allowance of hunting on Sunday in the county. The election shall be determined by a vote of the resident voters of the county in which the hunting on Sunday is proposed to be authorized. The county commission of the county in which Sunday hunting is proposed shall give notice to the public of the election by publication of the notice as a Class II–0 legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code and the publication area for the publication shall be the county in which the election is to be held. The date of the last publication of the notice shall fall on a date within the period of the fourteen consecutive days next preceding the election.

In May 2002, pursuant to *W.Va.Code*, 20–2–5(28), the Ritchie County Commission held an election to determine whether Sunday hunting on private land would be authorized in Ritchie County. Voting on a ballot identical to that specified in the statute, the voters chose to prohibit Sunday hunting by a vote of 1,454 to 859.[5]

The appellants in this case (and the plaintiffs in the court below) include the Hartley Hill Hunt Club, a private hunting club with about fifty members which rents 2,034 acres in Ritchie County. It appears that the members of the Hartley Hill Hunt Club are West Virginia citizens, but they do not live in Ritchie County.[6] Appellant Nolan Aleshire is a West Virginia citizen who owns land in Ritchie County. However, the appellants' complaint states that Mr. Aleshire does not reside there, but rather "spends numerous days over a variety of hunting seasons ... hunting and recreating" on his property. The one appellant that is differently situated from the others is the American Civil Liberties Union of West Virginia, which is an organization dedicated to defending citizens' rights that are contained in the *United States* and *West Virginia Constitutions*.

On July 21, 2003, the appellants brought a lawsuit against the appellee (and defendant-below) Ritchie County Commission seeking a declaratory judgment. The West Virginia Farm Bureau, as well as several local farm bureaus and their individual members, were later granted permission to intervene in the case as defendants. The appellants essentially claimed that the *West Virginia Constitution* contained numerous provisions that protect a citizen's right to hunt on private land. The appellants argued that by holding an election under *W.Va.Code*, 20–2–5(28) to bar Sunday hunting on private land, the Ritchie County Commission had violated those constitutional provisions. The appellants asked the circuit judge to issue an order declaring the statutory subsection invalid and unconstitutional.

In late 2005, both the appellants and the appellees filed motions for summary judg-

On the local option election ballot shall be printed the following:

Shall hunting on Sunday be authorized in _____ County?

[ ] Yes [ ] No

(Place a cross mark in the square opposite your choice.)

Any local option election to approve or disapprove of the proposed authorization of Sunday hunting within a county shall be in accordance with procedures adopted by the commission. The local option election may be held in conjunction with a primary or general election, or at a special election. Approval shall be by a majority of the voters casting votes on the question of approval or disapproval of Sunday hunting at the election. If a majority votes against allowing Sunday hunting, no election on the issue may be held for a period of one hundred four weeks. If a majority votes "yes" no election reconsidering the action may be held for a period of five years. A local option election may thereafter be held if a written petition of qualified voters residing within the county equal to at least five percent of the number of persons who were registered to vote in the next preceding general election is received by the county commission of the county in which Sunday hunting is authorized. The petition may be in any number of counterparts. The election shall take place at the next primary or general election scheduled more than ninety days following receipt by the county commission of the petition required by this subsection: *Provided*, That the issue may not be placed on the ballot until all statutory notice requirements have been met. No local law or regulation providing any penalty, disability, restriction, regulation or prohibition of Sunday hunting may be enacted, and the provisions of this article preempt all regulations, rules, ordinances and laws of any county or municipality in conflict with this subdivision.

5. The parties agree that the residents of forty-one counties have voted to prohibit Sunday hunting in their respective counties: Barbour, Berkeley, Braxton, Cabell, Calhoun, Doddridge, Fayette, Gilmer, Grant, Greenbrier, Hampshire, Hardy, Harrison, Jackson, Kanawha, Lewis, Marion, Mason, Mercer, Mineral, Monongalia, Monroe, Morgan, Nicholas, Pendleton, Pleasants, Pocahontas, Preston, Putnam, Raleigh, Randolph, Ritchie, Roane, Summers, Taylor, Tucker, Tyler, Upshur, Webster, Wirt, and Wood Counties. Fourteen counties have not yet held elections: Boone, Brooke, Clay, Hancock, Jefferson, Lincoln, Logan, Marshall, McDowell, Mingo, Ohio, Wayne, Wetzel and Wyoming Counties.

6. For instance, the appellants' complaint states that appellants Isaac Staats and Jack Summers are members of the hunting club, are residents of West Virginia, and that each is an "avid outdoorsman who spends numerous days over a variety of hunting seasons on the H & H Hunt Club leasehold hunting and recreating."

ment. After hearing arguments from both sides, on February 9, 2006, the circuit judge entered an order granting the appellees' motion for summary judgment, and denying the appellants' motion. The circuit judge concluded that *W.Va.Code*, 20–2–5(28) did not violate any part of the *West Virginia Constitution*.

The appellants now appeal the circuit judge's February 9, 2006 order.

## II.

### *Standard of Review*

The appellants in this case ask us to review several arguments about the law, namely whether *W.Va.Code*, 20–2–5(28) violates the *West Virginia Constitution*.

■ Because this appeal presents questions of law involving the interpretation of a statute and the interpretation of the *West Virginia Constitution*, we may review all parts of the circuit judge's decision. As we have said before, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ When this Court is asked to weigh the constitutionality of a statute, we are guided in our deliberations by several fundamental principles. These principles were summarized by the Court in Syllabus Point 1 of *Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965):

In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the

courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

■ Under these principles, the Court cannot question or review the wisdom of any legislative policy; instead, the Legislature's policy choices can only be subjected to review by the ultimate constitutional reviewing authority: the scrutiny of the people at the ballot box.[7] The Court can only measure the language of *W.Va.Code*, 20–2–5(28) against the language of the *West Virginia Constitution*. In doing so, we must attempt to carefully interpret *W.Va.Code*, 20–2–5(28) to give the statute, if it is reasonably possible, a meaning or use that is constitutional. The statute may only be struck down as unconstitutional if the statute is unconstitutional beyond a reasonable doubt.

We now turn to the parties' arguments.

## III.

### *Discussion*

■ The appellants' first of four arguments is that Article III, Section 22 of the *West Virginia Constitution*—also known as the "Right to Keep and Bear Arms Amendment"—creates a constitutional right to hunt. Article III, Section 22 of the *Constitution* states:

A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use.

---

**7.** As we said in *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 737, 474 S.E.2d 906, 917 (1996):

Though we may believe the legislature's actions are harsh or even cruel, or sound economic policy, its policy decisions, under our constitutional framework, are its own, subjecting it to the scrutiny of the electorate in whose

hands the constitution vests the ultimate reviewing authority.... [W]e are not constitutionally authorized to superlegislate nor decide the social and economic merits of legislative judgments. Only when the legislature violates specific constitutional principles can we invalidate legislation.

(Citation omitted.)

The appellants concede that the rights protected by Article III, Section 22 are not absolute, because in *State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 377 S.E.2d 139 (1988), this Court approved the Legislature's right to enact "reasonable" limitations upon a person's right to keep and bear arms. As we stated in Syllabus Point 4 of *Buckner*:

> The West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the *West Virginia Constitution*, known as the "Right to Keep and Bear Arms Amendment."

Still, the appellants argue that the limitation on Sunday hunting in *W.Va.Code*, 20-2-5(28) is unreasonable and contrary to Article III, Section 22, and that the circuit judge erred in concluding otherwise.

The appellees' argument in response is that nothing in Article III, Section 22, or in any other part of the *Constitution*, creates a right to hunt on Sundays. They argue that the *Constitution* protects a person's right to "keep and bear arms . . . for *lawful* hunting," and argue that nothing in *W.Va.Code*, 20-2-5(28) restricts a person's right to keep or bear arms. Further, the appellees contend—and counsel for the appellants conceded at oral argument—that nothing in the *Constitution* deprives the Legislature of its ability to regulate hunting. In sum, the appellees take the position that Article III, Section 22 preserves the Legislature's power to define "lawful hunting," and argue that

that power includes the right to enact a statute defining Sunday hunting on private land to be unlawful. We agree.

The Legislature, through the exercise of its police power,[8] is vested with the authority to enact laws that, within constitutional limits, will tend to promote the general welfare of the people. As part of its police power, the Legislature has declared it "to be the public policy of the State of West Virginia that the wildlife resources of this State shall be protected for the use and enjoyment of all the citizens of this State." *W.Va.Code*, 20-2-1 [1969]. To carry out this public policy, the Legislature has enacted numerous regulatory statutes for hunters, trappers and fisherman, including the statute being challenged in this case.

Article III, Section 22 does not create an unfettered right to hunt, but rather preserves an individual's right to bear arms for purposes of "lawful hunting." We have previously interpreted this clause as presupposing that limits can be imposed on a person's right to hunt in West Virginia. As we once stated, "[a] strict application of this constitutional provision indicates that a person may keep and bear arms with regard to hunting only if such hunting is lawful." *State ex rel. West Virginia Div. of Nat. Resources v. Cline*, 200 W.Va. 101, 107, 488 S.E.2d 376, 382 (1997) (upholding under Article III, Section 22 the Legislature's right to prohibit hunters from carrying loaded firearms in a moving vehicle).

We conclude that Article III, Section 22 of the *West Virginia Constitution* protects a person's right to keep and bear arms for lawful hunting. This clause preserves the State's right, through the exercise of its po-

---

8. In Syllabus Point 5 of *Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965), this Court defined the State's "police power" as follows:

> The police power is the power of the state, inherent in every sovereignty, to enact laws, within constitutional limits, to promote the welfare of its citizens. The police power is difficult to define precisely, because it is extensive, elastic and constantly evolving to meet new and increasing demands for its exercise for the benefit of society and to promote the

general welfare. It embraces the power of the state to preserve and to promote the general welfare and it is concerned with whatever affects the peace, security, safety, morals, health and general welfare of the community. It cannot be circumscribed within narrow limits nor can it be confined to precedents resting alone on conditions of the past. As society becomes increasingly complex and as advancements are made, the police power must of necessity evolve, develop and expand, in the public interest, to meet such conditions.

lice power, to enact reasonable laws defining what forms of hunting are lawful.

The appellants take the position that the prohibition of Sunday hunting on private land in *W.Va.Code*, 20–2–5(28) is an unreasonable law restricting the rights protected by Article III, Section 22. The appellees, however, note that *W.Va.Code*, 20–2–5 contains numerous limitations on the time, place and manner in which persons may hunt in West Virginia.[9] None of these other hunting limitations is being challenged by the appellants. In fact, the appellees point out that among the statutory limitations that the appellants do not challenge as unconstitutional is *W.Va.Code*, 20–2–5(27), the provision prohibiting hunting on public property on Sunday.

After carefully reviewing the language of *W.Va.Code*, 20–2–5(28), we conclude that the restrictions on Sunday hunting on private land created by the statutory subsection are not unreasonable, and are well within the broad authority of the Legislature to enact policy as it sees fit. Prohibiting Sunday hunting allows one day of the week during hunting season when citizens can enjoy private and public property without being startled or threatened by gunshots, or fear being hit by stray bullets or arrows (including bullets or arrows launched by a hunter standing on the hunter's own property). These restrictions are policy determinations that are subject to the ultimate review of the voters, not this Court.

The appellants' second argument is that *W.Va.Code*, 20–2–5(28) unconstitutionally delegates the Legislature's power to regulate hunting to the citizens of West Virginia's various counties. The appellants concede that the Legislature may enact statutes that regulate the exercise of the constitutional rights guaranteed by Article Ill, Section 22, so long

as there is a rational and reasonable basis for those regulations. However, the appellants argue that it is improper for the Legislature to delegate its power to the electorate, because constitutional rights can never be subject to arbitrary and capricious majority approval.

As support for their argument, the appellants cite to the seminal 1943 U.S. Supreme Court case of *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). In *Barnette*, the West Virginia Legislature had enacted a law requiring schoolchildren to salute the flag and say the Pledge of Allegiance, or face expulsion. Several Jehovah's Witnesses—whose religion forbade them from saluting or pledging to political institutions or symbols—challenged the law as unconstitutional. The U.S. Supreme Court struck down the law, finding that the First Amendment to the *United States Constitution* protected students from being forced to proclaim support for the government by saluting a flag or saying a pledge.

The appellants argue that *Barnette* stands for the principle that constitutional rights—like those contained in Article III, Section 22—are not subject to majority approval at the ballot box. In *Barnette*, the Court examined a 1940 U.S. Supreme Court case [10] where it was stated that only legislatures, and not courts, have the power to define and guard constitutional liberties. In the older case, the Court had asserted that the existence and limits of constitutional rights are best fought in the arena of public opinion—in the ballot box rather than the jury box.

The Court in *Barnette* rejected this position and overruled the 1940 case. As the Court stated, in an oft-quoted passage:

9. For instance, *W.Va.Code*, 20–2–5 prohibits hunting outside the time of any "open season" established by rule by the Director of the Division of Natural Resources; prohibits digging or smoking certain wild animals out of their dens; prohibits the use of artificial light to locate or attract animals while hunting (except for raccoons, opossums or skunks); prohibits hunting from airplanes and automobiles; requires that beaver and muskrat only be captured by traps; prohibits hunting while intoxicated; prohibits hunting with a ferret; restricts the purchase of furs and pelts, unless licensed to do so; prohibits

the use of dynamite for fishing, and explosive or poisoned arrows for hunting; prohibits the carrying of a bow and a gun at the same time; prohibits the use of crossbows in hunting; and prohibits allowing dogs to chase wildlife between May 1st and August 15th, unless the dogs are being trained on the dog-owner's own land or with the written permission of the land owner.

10. *Minersville School District v. Gobitis*, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940).

The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as *legal principles to be applied by the courts.* One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections. 319 U.S. at 638, 63 S.Ct. 1178 (emphasis added). The appellants argue that this passage means that the local option elections authorized by *W.Va.Code,* 20–2–5(28) are— because they might raise questions impacted by Article III, Section 22—unconstitutional. We disagree, because when this passage is viewed in context, it takes on a different, greater meaning: that fundamental constitutional rights are "legal principles to be applied by the courts," and not solely by legislatures under the supervision of voters.

In other words, *Barnette* established the principle that courts may define and guard constitutional rights. *Barnette* simply does not, as the appellants argue, preclude local option elections when a constitutional right might be implicated.

Furthermore, this Court has, on numerous past occasions, written approvingly of local elections on various issues. *See, e.g., Rutter & Co. v. Sullivan,* 25 W.Va. 427 (1885) (statute creating a municipal court, but providing that its operation should be suspended until it was approved by the voters, was constitutional and valid); *Haigh v. Bell,* 41 W.Va. 19, 23 S.E. 666 (1895) (statute prohibiting hog owners from allowing their livestock to run at large yet providing, upon an appropriate petition, that counties could hold an election to determine if the prohibition would be enforced in their county, was constitutional); *Koen v. Fairmont Brewing Co.,* 69 W.Va. 94, 70 S.E. 1098 (1911) (lease of property to operate a saloon was voidable, but not void,

after county local option election barred the sale of liquor); *Boyles v. Barbour County Court,* 116 W.Va. 689, 182 S.E. 868 (1935) (Legislature had authority to permit county local option elections to prohibit manufacture and sale of liquor, even after repeal of Prohibition); *Tweel v. West Virginia Racing Commission,* 138 W.Va. 531, 76 S.E.2d 874 (1953) (approving operation of a horse racing track without local option election, because local option election statute exempted tracks in operation prior to statute's passage); *Charles Town Raceway, Inc. v. West Virginia Racing Commission,* 143 W.Va. 257, 101 S.E.2d 60 (1957) (after county voters approved construction of horse racing track in a local option election, racing commission had a duty to issue construction permit for track); *State ex rel. Bess v. Black,* 149 W.Va. 124, 139 S.E.2d 166 (1964) (compelling a county commission to call a local option election to determine whether there should be work, labor, or business on Sunday in the county); *Tri–State Greyhound Racing, Inc. v. Johnson,* 160 W.Va. 33, 37, 230 S.E.2d 837, 840 (1976) (approving a local option election regarding construction of a dog racetrack in Cabell County, stating "society's collective experience indicates that public policy is best served when a community is given ample opportunity to object to activities which potentially place in jeopardy the moral order of the community.").

■ The appellants correctly argue that the Legislature cannot delegate its power to enact laws, because the *West Virginia Constitution,* Article VI, Section 1, states that all "legislative power shall be vested in a senate and house of delegates." However, this constitutional clause does not prevent the Legislature from passing a law, and then providing that whether or not the law will operate in a particular locality depends upon the popular will as expressed through a local option election.[11] As we once stated in

---

**11.** As we stated in *Rutter & Co. v. Sullivan,* 25 W.Va. 427 (1885), a case that approved the constitutionality of a statute permitting a local election concerning the creation of a municipal court:

[T]he legislature can not delegate its power under the constitution to the people; ... they

must enact statutes, as they alone have the power, and such power can not be delegated. But the fallacy is in the minor premise. The people do not enact the statute. It is enacted in a complete form by the law-making power and is only submitted to the people for their approval. If the legislature should undertake

*Haigh v. Bell*, 41 W.Va. 19, 23, 23 S.E. 666, 667 (1895),

> The propriety and necessity of a certain class of police regulations depend upon time, place, and circumstances. What is required in one district or town may not be in another.

After carefully examining the circuit judge's order, we find no error in the circuit judge's conclusion. The Legislature's decision to permit statewide local option elections in *W.Va.Code*, 20-2-5(28), to determine whether Sunday hunting on private land would be authorized or prohibited, did not violate the *Constitution*.

■ The third argument raised by the appellants is that the ballot language chosen by the Legislature is misleading, and therefore violates the due process protections of our *Constitution*.[12] The appellees counter that the ballot language was not only accurate, it was "elegant in its simplicity."

■ A court must determine, under an objective standard, whether the ballot language "could have mislead or confused a reasonable voter." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 215 n. 10, 470 S.E.2d 162, 169 n. 10 (1996). *W.Va.Code*, 20-2-5(28) provided that the ballot was to say:

> Shall hunting on Sunday be authorized in _____ County?
>
> ___ Yes      ___ No

> to authorize the people or a convention from the people to enact a statute on a certain subject, then it might be well said, that it had delegated its power, and such act so enacted would have no constitutional warrant; but it is very different where the legislature submits to the people for their approval a statute which it has already passed.
>
>                   . . .
>
> It will not be questioned, that it is entirely competent for the legislature to provide for taking the vote of the people or any portion of them upon a measure directly affecting them, and if a given number be in favor of its adoption, to enact a law therefor carrying it into effect. And there would seem to be but little difference in substance in a reversal of the process by first enacting the law in all its parts but providing that its operation is to be suspended until it be ascertained that the requisite number of the people to be affected by it are in favor of its adoption.

The ballot used by Ritchie County in May 2002 was identical to the statutory language.

■ A strained reading of the ballot language might create some ambiguity—for instance, the ballot does not say that the election was to decide Sunday hunting *only on privately-owned land*. This ambiguity is tempered, however, when one considers that *W.Va.Code*, 20-2-5(27) (passed at the same time as *W.Va.Code* 20-2-5(28)) already barred Sunday hunting on public land. Because citizens are presumed to know the law,[13] we must assume that Ritchie County voters knew that their vote did not apply to public land. Further, this Court is restrained in its standard of review, and the burden of proof is on the appellants to show that the statute, and the ballot language it mandated, is unconstitutional beyond a reasonable doubt. This Court also has some concerns about the ballot language mandated by the Legislature. But while the appellants bore the burden of proof, it appears that the appellants—none of whom live or vote in Ritchie County—did not introduce before the circuit judge *any* evidence suggesting that any one Ritchie County voter was misled or confused by the ballot language.

Accordingly, after careful consideration of the record created in the court below, we cannot say—under an objective standard—that the ballot language mandated by *W.Va. Code*, 20-2-5(28) could have mislead or confused a reasonable voter.[14]

25 W.Va. at 432-33 (*quoting, in part, Bull v. Read*, 13 Gratt. 78, 88, 54 Va. 78, 88 (Va.1855)).

**12.** Article III, Section 10 of the *West Virginia Constitution* states:

> No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.

**13.** "All persons are presumed to know the law. Ignorance thereof is no excuse for its violation." *State v. McCoy*, 107 W.Va. 163, 172, 148 S.E. 127, 130 (1929). *See also, Merrill v. West Virginia Dept. of Health and Human Resources*, 219 W.Va. 151, 157, 632 S.E.2d 307, 313 (2006).

**14.** *W.Va.Code*, 20-2-5(28) permits the voters of each county to hold an election to reconsider a vote prohibiting Sunday hunting on private property after two years have passed, and to reconsider a vote allowing Sunday hunting on private property after five years. As the statute states:

The appellants' fourth and final argument is that *W.Va.Code*, 20–2–5(28) violates the equal protection guarantee found in Article III, Section 10 of our *Constitution*. The appellants take the position that the local option elections permitted by the statute create two unreasonable classifications—those citizens in counties where a majority of voters prohibited Sunday hunting on private property, and those where Sunday hunting is permitted—and arbitrarily treats those similarly-situated individuals differently.

■ To pass constitutional scrutiny, we look to see

> ... whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.

Syllabus Point 4, *Gibson v. West Virginia Dept. of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991) (quoting and modifying Syllabus Point 7, *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983) and Syllabus Point 4, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984)).

■ The appellants' objection to local option elections on equal protection grounds is somewhat difficult to comprehend. It is the nature of our federal system of government, and does not violate any constitutional right to equal protection, to allow voters in one jurisdiction to choose to treat themselves differently than voters in another. States, counties, townships, boroughs and cities throughout America have chosen different laws and different systems of government that reflect differing needs and wishes. Local option elections are just one manifestation of that system, and as stated previously, there are plenty of examples of local option elections in West Virginia's history.

■ We believe that *W.Va.Code*, 20–2–5(28) passes equal protection scrutiny. The statute certainly bears a reasonable relationship to a proper governmental purpose: the management of the wildlife resources of the State, including preserving the "economic contributions" of wildlife for the "best interests of the people of this State[.]" *W.Va. Code*, 20–2–1(2). The Legislature's creation of county-based classes was also a rational one that recognized the different social, economic, historic and geographic needs of each county. Lastly, all persons within the classes—that is, the citizens of the entire state—are treated equally. The Legislature passed a general law that "embraces all persons and places within the State,"[15] and properly left it to the various political subdivisions to determine the impact of that general law.[16]

### IV.

### Conclusion

After careful consideration of the arguments of the parties, we cannot say that the

---

If a majority votes against allowing Sunday hunting, no election on the issue may be held for a period of one hundred four weeks. If a majority votes "yes" no election reconsidering the action may be held for a period of five years. A local option election may thereafter be held if a written petition of qualified voters residing within the county equal to at least five percent of the number of persons who were registered to vote in the next preceding general election is received by the county commission of the county in which Sunday hunting is authorized.
To be clear, our decision does not preclude future challenges to the ballot language mandated by the statute.

**15.** *State ex rel. Heck's Inc. v. Gates*, 149 W.Va. 421, 449, 141 S.E.2d 369, 387 (1965) ("[A] general law in its simplest form embraces all persons and places within the State but varying circumstances often render it impossible to apply the same rule everywhere and to everybody.").

**16.** Article VI, Section 39 of the *West Virginia Constitution* mandates that laws passed by the Legislature be "general laws" applicable to all citizens in general, and prohibits "local or special laws" that affect only certain localities or specific cases. The *Constitution* specifically states that:

> The legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for . . .
> ' Regulating or changing county or district affairs. . . .

circuit judge erred in granting summary judgment to the appellees. We find no merit to the appellants' arguments that *W.Va.Code,* 20–2–5(28) violates any provision of the *West Virginia Constitution.* Accordingly, the circuit judge's February 9, 2006 order must be affirmed.

Affirmed.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of the Court.

Judge DONALD COOKMAN, sitting by temporary assignment.